# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **G.B.-1, G.B.-2, and G.B.-3**

**No. 16-0196** (Roane County 15-JA-14, 15-JA-15, & 15-JA-16)

**FILED**

**June 6, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Paternal Grandmother A.B., by counsel Lee F. Benford, II, appeals the Circuit Court of Roane County's January 6, 2016, order denying her permanent placement of the children.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Anita Harold Ashley, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her permanent placement of the children.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2015, the DHHR filed an abuse and neglect petition against the children's parents alleging that they failed to provide the children with necessary food, clothing, shelter, supervision, medical care, or education. The DHHR also alleged that the parents used illegal drugs. In April of 2015, the circuit court held an adjudicatory hearing, during which the parents stipulated that their substance abuse impaired their ability to care for the children. Accordingly, the circuit court found that the children were abused and neglected. Subsequently, the guardian

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.,* 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990). Because all of the children in this case have the same initials, we have distinguished each of them using numbers 1, 2, and 3 after their initials in this Memorandum Decision. The circuit court case numbers also serve to distinguish each child.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed at the time of the lower court proceedings.

filed her report indicating that the parents had "taken some drug tests, all of which have been positive for substances, and [had] missed multiple screens."

In July of 2015, the circuit court held a dispositional hearing. The DHHR presented evidence of the parents' drug abuse history, their excessive drug use, and failed drug screens. A Child Protective Services ("CPS") worker testified that the mother and father both tested positive six times and failed to submit to six drug screens.

Further, the CPS worker testified that the mother was arrested and incarcerated for "disrupting a governmental process" during the underlying proceedings and failed to undergo a psychological evaluation. Finally, the CPS worker testified that the father participated in a three-day "methamphetamine binge," failed to participate in any other services, and failed to visit the children since the underlying petition was filed. The mother testified that she did not abuse and neglect her children. She admitted that she was addicted to prescription drugs and would not currently pass a drug screen. At the conclusion of the hearing, the circuit court found that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future and the children's welfare required termination. By order entered on July 28, 2015, the circuit court terminated the parents' parental rights to the children.[3]

Thereafter, petitioner filed a motion for placement and guardianship of the children alleging that she was the children's primary caretaker since birth. Petitioner also argued that she was the children's psychological parent. Beginning in October of 2015, the circuit court held three evidentiary hearings on petitioner's motion, during which it heard testimony from multiple witness. Petitioner testified that she was the children's primary caretaker until they were removed from her care.[4] According to petitioner, "a lot of the [allegations the biological parents] were charged with [were] never checked out." Furthermore, petitioner testified that her son was a "functional addict" and should not have had his parental rights terminated because he should have been allowed additional "opportunities." Petitioner presented additional witnesses corroborating her testimony that she took care of the children prior to their removal.

Petitioner's then sixteen-year-old daughter testified that she tried smoking marijuana while living with petitioner and that petitioner was aware that she was a "cutter" yet failed to seek appropriate treatment for her behavior. A CPS worker testified that petitioner requested the DHHR to remove the two older children from her care due to a stressful situation in her residence. Subsequently, the worker indicated that petitioner was initially granted visitation with the children, but visitations were terminated because the children were "having temper-tantrums" after visitation and after petitioner alleged that the foster parents were physically abusing the children. The CPS worker also testified that petitioner continued to have a relationship with the children's parents after their parental rights were terminated and continued to contact the foster parents after visitations were terminated in violation of the CPS worker's directive. The foster

---

[3]This Court affirmed the termination of the parents' parental rights by Memorandum Decisions entered February 16, 2016. *See* WVSCA No. 15-0829 and 15-0830.

[4]G.B.-1 had heart surgery in January of 2015, after which he was placed in the foster parents' home. Pursuant to a custody arrangement between the foster parents and the biological parents, the other children were placed with the foster parents in March of 2015.

mother testified that the children were thriving in her custody, but that they reverted to their old behaviors following visitations with petitioner. After visitations were cancelled, the foster mother stated that petitioner and her immediate family began harassing and threatening her family in an effort to see the children. At the close of evidence, the circuit court directed the parties to submit proposed findings of fact and conclusions of law by January 4, 2016.

In December of 2015, the DHHR filed a motion to reopen the evidence following an incident at petitioner's residence in which the police were called. On December 26, 2015, petitioner invited the children's parents to her home to celebrate Christmas. During the evening, the children's mother became intoxicated, destroyed several items in petitioner's house, and "body slammed" petitioner's then twelve-year-old granddaughter. Thereafter, the children's mother was arrested for destruction of property, public intoxication, and obstructing an officer. On January 8, 2016, the circuit court held an evidentiary hearing on the DHHR's motion. Despite previously testifying that "[the children's mother] would never be around in [sic] my home or on our property" petitioner acknowledged that she willingly invited the children's mother into her home and provided her with alcohol. Further, petitioner minimized the incident stating that her granddaughter simply fell and was not "body slammed." Finally, a CPS worker testified that there is a current CPS investigation against petitioner based upon this incident. Ultimately, the circuit court denied petitioner permanent placement of the children upon a finding that petitioner was "not a suitable placement" and that it was not in the children's best interests. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, we find no error in the circuit court denying petitioner permanent placement of the children.

On appeal, petitioner argues that the circuit court erred in finding that her home was not a suitable placement for the children. We disagree. This Court has held that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (*citing* Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d

3

669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). In the case *sub judice*, we find that the circuit court was presented with sufficient evidence upon which to determine that petitioner's residence was not a suitable placement alternative. While petitioner argues that she presented unrebutted testimony that she was the children's primary caretaker, the testimony establishes that G.B.-1 has been in foster placement for the majority of his life and that petitioner requested the DHHR to remove G.B.-2 and G.B.-3 from her care due to issues within her own home. Evidence further established that petitioner minimized the biological parents' conduct during the underlying abuse and neglect proceedings, continued to have contact with the children's biological mother after testifying that petitioner would not be allowed on her property, and subjected her own family to the biological mother's violent behavior which resulted in petitioner's granddaughter being "body slammed." As such, we find no merit to this assignment of error.

Related to this assignment of error, petitioner also argues that the circuit court erred in failing to apply the grandparent preference and further finding that placement with her was not in the children's best interests. Petitioner claims the circuit court, pursuant to West Virginia Code § 49-4-114(a)(3), should have placed the children with her, as their paternal grandmother, because she was the children's primary caretaker since birth.[5]

While it appears that petitioner's home study was approved in April of 2015, petitioner's argument ignores the law in this State. This Court has been clear that the preference for placing children with grandparents is subordinate to the best interests analysis. We have held as follows:

> West Virginia Code § 49-3-1(a) provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.

> By specifying in West Virginia Code § 49-3-1(a)(3) that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

---

[5]Because the permanency hearing in this matter took place after May 20, 2015, the day the new version of West Virginia Code §§ 49-1-101 through 49-7-304 went into effect, the Court will apply the revised versions of those statutes on appeal.

Syl. Pts. 4 & 5, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005); *see also In re Aaron H.*, 229 W.Va. 677, 735 S.E.2d 274 (2012) (affirming circuit court order that placed child with foster parent over grandparent based upon the child's best interests.); *In re Hunter*, 227 W.Va. 699, 715 S.E.2d 397 (2011) (the grandparent preference must be considered in conjunction with our long standing jurisprudence that "the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children." (internal citations omitted)); *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010) (holding that the grandparent preference must be tempered by a court's consideration of the child's best interests.).

Moreover, petitioner's argument ignores this Court's recent holding that

> [w]hile the grandparent preference statute, at W.Va. Code § 49–3–1(a)(3) (2001) (Repl. Vol. 2014), places a mandatory duty on the West Virginia Department of Health and Human Resources to complete a home study before a child may be placed for adoption with an interested grandparent, "the department shall first consider the [grandparent's] suitability and willingness . . . to adopt the child." There is no statutory requirement that a home study be completed in the event that the interested grandparent is found to be an unsuitable adoptive placement and that placement with such grandparent is not in the best interests of the child.

Syl. Pt. 10, *In re L.M.*, 235 W.Va. 436, 774 S.E.2d 517 (2015). In determining that placement in petitioner's home was not in the children's best interests, the circuit court relied on the substantial testimony from the three evidentiary hearings and the hearing on the DHHR's motion to reopen the evidence based upon the events in petitioner's home in December of 2015. As discussed above, the circuit court heard testimony that petitioner failed to seek appropriate treatment for her own child, minimized the parents' behavior that led to the filing of the abuse and neglect proceedings, and harassed the children's foster parents after visitations were terminated. Importantly, the circuit court heard evidence that petitioner continued to associate with the biological parents after their parental rights were terminated, which resulted in the biological mother "body slamming" petitioner's minor granddaughter during the altercation in December. After hearing the evidence at the four evidentiary hearings, the circuit court found that "the presumption in favor of placement of the children with the grandparent has been rebutted." For these reasons, this Court affirms the circuit court's determination that petitioner was not an appropriate permanent placement for the minor children.

For the foregoing reasons, we affirm the circuit court's January 6, 2016, order denying petitioner's permanent placement of the children.

Affirmed.

**ISSUED:** June 6, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II